UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNION SAVINGS BANK, | ) | |
|       Plaintiff, Counter-Defendant | ) | |
|   vs. | ) | No.  1:10-cv-00843-LJM-MJD |
| | ) | |
| ALLSTATE INDEMNITY | ) | |
| COMPANY | ) | |
|      Defendant, Counter-Plaintiff. | ) | |

| | |
|---|---|
| ALLSTATE INDEMNITY | ) |
| COMPANY, | ) |
|      Third-Party Plaintiff, | ) |
|   vs. | ) |
| | ) |
| SCOTT TOD and KRISTEN | ) |
| TOD, | ) |
|      Third-Party Defendants. | ) |

## <u>ORDER</u>

This matter comes before the Court on plaintiff's, Union Savings Bank ("Union Savings"), Motion for Partial Summary Judgment [dkt. no. 44]; defendant's, Allstate Indemnity Company ("Allstate"), Cross-Motion for Summary Judgment [dkt. no. 48]; and third-party defendant's, Kristen Tod ("Ms. Tod"), Motion for Summary Judgment [dkt. no. 46].  This matter centers on the scope of  third-party defendant's, Scott Tod ("Mr. Tod"), Allstate Landlords Package Policy AS84 (the "Landlords Policy").  The property in question is located at 14930 Sulky Way, Carmel, Hamilton County, Indiana 46032 (the "Property"). The Landlords Policy lists Union Savings as  the mortgatee of the Property.  Union Savings seeks a declaration from the Court that the Landlords Policy provides it with coverage for damage to the Property.  Union Savings further seeks damages for breach of contract and Allstate's bad faith in denying Union Savings' claim.  Union Savings has only moved for

summary judgment on its declaratory judgment request.  Allstate seeks a declaration from the Court that the Landlords Policy does not provide coverage to either the Tods or Union Savings for the damage to the Property, as well as summary judgment on Union Savings' bad faith and breach of contract theories.  Ms. Tod, having disclaimed any interest in the Landlord's Policy, seeks dismissal from the case.  For the following reasons, the Court **GRANTS** Union Savings' Motion for Partial Summary Judgment [dkt. no. 44]; **GRANTS in PART and DENIES in PART** Allstate's Cross-Motion for Summary Judgment [dkt. no. 48], and **GRANTS** Ms. Tod's Motion for Summary Judgment [dkt. no. 46].

## I.  BACKGROUND

On October 27, 2006, the Tods purchased the Property.  Grass Dep. Exs A-B. Although there is some dispute as to whether Ms. Tod signed the promissory note that was secured by a mortgage on the Property, there is no dispute that Union Savings was the mortgagee of the Property.  Stewart Aff. Ex. 1.  On February 23, 2008, Mr. Tod obtained the Landlords Policy for the Property.  *Id.*

On January 2, 2009, Union Savings notified the Tods that they were in default on their loan and that Union Savings would soon begin foreclosure proceedings.  Grass Dep. Ex. D.  On January 5, 2009, Union Savings engaged an outside contractor to visually inspect the exterior of the Property prior to initiating foreclosure proceedings.  *Id.* Ex. E. In its report, the contractor noted that the water and electricity were "off."  *Id.*  On March 3,2009, Union Savings sent an appraiser to assess the Property.  Stewart Aff. Ex. 5.  The appraiser discovered water in the basement of the Property and notified Union Savings.

2

*Id.* Union Savings immediately notified Allstate of the damage. *Id.* On March 6, 2009, Union Savings filed a formal claim under the mortgagee clause in the Landlords Policy. *Id.*

On March 25, 2009, by letter, Allstate initially denied Union Savings' claim. Compl. Ex. B. Citing exclusions in the Landlords Policy for water damage, Allstate explained that there was no coverage for the damage under the Landlords Policy. *Id.* On June 4, 2009, Union Savings' counsel submitted a rebuttal letter to Allstate, explaining that the loss was covered under the Policy. *Id.* Ex. C. Specifically, the letter explained that the damage was neither caused by nor consisted of water; instead, it was principally caused by the electrical shutdown of the property by the property owner and consequent breakdown of the sump pump. *Id.* Further, explained the letter, even if there were exclusions applicable to the homeowner, the mortgagee clause protected the mortgagee's interest for a loss caused by the failure of an insured to take reasonable steps to prevent an increase in the hazard or to take reasonable steps to preserve the property. *Id.*

On November 30, 2009, after consultation with outside counsel and a forensic expert, Allstate concluded that Union Savings' loss was excluded under Section I of the Landlords Policy. *Id.* Ex. E. Specifically, Allstate cited language excluding coverage for a loss consisting of or caused by "[w]ater or any other substance that overflows from a sump pump." *Id.*

The Landlords Provision contains a mortgagee clause. It provides in relevant part:

Mortgagee

A covered loss will be payable to the mortgagees named on the policy declarations to the extent of their interest and in the order of precedence. All provisions of Section I of this policy apply to these mortgagees.

We will:

3

a) protect the mortgagee's interest in a covered building structure in the event of an increase in hazard, intention or criminal acts of, or directed by, an insured person, failure by any insured person to take all reasonable steps to save a preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions.

Landlords Policy at 19.  The pertinent portion of Section I provides:

Losses We Do Not Cover Under Coverages A and B:

A.   We do not cover loss to the property . . . consisting of or caused by:

*** 

2.   Water or any other substance that backs up through sewers or drains.

3.   Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4.   Water or any other substance on or below the surface of the ground, regardless of its source.  This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through, any part of the residence premises.

***

7.   The failure by any insured person to take all reasonable steps to save and preserve property when the property is endangered by a loss we cover.

8.   Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an insured person.

9.   Intentional or criminal acts of, or at the direction of, an insured person, if the loss that occurs:
    a)   may be reasonably expected to result from such acts; or

    b)   is the intended result of such acts.

This exclusion applies regardless of whether an insured person is actually charged with, or convicted of, a crime.

4

Landlords Policy at 7-8.

The Court includes additional facts below as necessary.

## II. <u>STANDARD</u>

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990).  Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed.  Fed. R. Civ. P. 56(c)(1).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the

5

responsibility of identifying applicable evidence.  *See Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim.  *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994).  "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## III. DISCUSSION

### A. MS. TOD'S MOTION FOR SUMMARY JUDGMENT

The Court will address Ms. Tod's Motion for Summary Judgment before turning its attention to the substance of Union Savings' and Allstate's cross-motions.  Ms. Tod asserts

6

that because she has disclaimed any interest that she had in the Landlords Policy and because no other claims have been asserted against her, the time for amending the pleadings having expired, the Court should dismiss her from the lawsuit.  The only opposition her motion faces occurs in the form of a response from Union Savings.  Union Savings disputes Ms. Tod's assertion that she has no obligation on the promissory note secured by the mortgage on the Property (the "Note").  Union Savings explains that although it released Ms. Tod from her obligations under the Note per an agreement memorialized in *In Rem Agreed, and Default Judgment and Decree of Foreclosure* filed in *Union Savings Bank v. Scott Tod, et al.*, No. 29C01-0903-MF-500, Hamilton County Circuit Court, Hamilton County, Indiana (the "State Court Action"), it recently found another executed copy of the Note that appears to contain Ms. Tod's authentic signature.  Pl.'s Ex. C.; Dkt. No. 53-3.  In reliance on this newly discovered copy of the Note, Union Savings has moved to reopen the State Court Action.  Pl.'s Ex. D; Dkt. No. 53-4.  Union Savings' motion in the State Court Action is currently pending.

Although Union Savings does raise a question of fact in its response to Ms. Tod's Motion, it is not material.  It is undisputed that Union Savings has not asserted any cause of action against Ms. Tod in the present action and, further, that the time for amending the pleadings is well past.  *See* Dkt. No. 22 (case management plan).  The only pending legal question concerning Ms. Tod in this action is whether Allstate owes her any obligation under the Landlords Policy.  Because Ms. Tod has disclaimed any interest in the Landlords Policy, the Court **DECLARES** as a matter of law that she is not entitled to any indemnification or defense under the Landlords Policy.  Accordingly, the Court **GRANTS**

7

Ms. Tod's Motion for Summary Judgment, and she is **DISMISSED WITH PREJUDICE** as a party from this case.

## B.  UNION SAVINGS' AND ALLSTATE'S CROSS MOTIONS FOR SUMMARY JUDGMENT

The Court now turns its attention to Union Savings' and Allstate's cross-motions for summary judgment on the issue of whether the Landlords Policy provides coverage for the loss Union Savings claimed on March 6, 2009.  The parties agree that Indiana law is the appropriate law for the Court apply to this action.

1. <u>Declaratory Judgment as to the Scope of Coverage Provided to Union Savings</u>

In Indiana, "[i]nsurance contracts are governed by the same rules of construction as other contracts."  *Earl v. Am. States Preferred Ins. Co*, 744 N.E.2d 1025, 1027 (Ind. Ct. App. 2001).  Therefore, the interpretation of an insurance policy generally presents a question of law that is appropriate for summary judgment.  *Id.*  "When interpreting an insurance policy, [the Court's] goal is to ascertain and enforce the parties' intent as manifested in the insurance contract."  *Burkett v. Am. Family Ins. Grp.*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000) (internal quotation omitted).  The Court will give the language of the policy its plain and ordinary meaning if it is clear and unambiguous.  *Id.*  A provision is ambiguous if it "is susceptible to more than one interpretation and reasonable persons would differ as to its meaning."  *Am. Family Ins. v. Globe Am. Cas. Co.*, 774 N.E.2d 932, 935 (Ind. Ct. App. 2002).  The mere fact that the parties offer different interpretations of the policy language is not enough to create an ambiguity.  *Id.*  If ambiguity exists, the Court will

construe the language strictly against the insurer and in favor of coverage in the case of a dispute between an insurer and an insured.  *See Gallant Ins. Co. v. Amaizo Fed. Credit Union*, 726 N.E.2d 860, 864 (Ind. Ct. App. 2000).

Allstate argues that by its clear terms, the Landlords Policy does not cover loss to property "consisting of or caused by . . . water or any other substance that overflows from a sump pump."  Asserting that the loss in the instant case was caused by water that overflowed from a sump pump, Allstate concludes that the Court should declare that there is no coverage under the Landlords Policy for Union Savings' claimed loss.  Union Savings, however, invokes the "efficient proximate cause" theory to argue that the Landlords Policy does provide coverage for Union Savings' loss because the loss resulted from an increase in hazard caused by the insured.  Accordingly, the Court will first address the causation of the claimed loss.

The "efficient proximate cause" theory is set out in *Associated Aviation Underwriters v. George Koch Sons, Inc.* 712 N.E.2d 1071 (Ind. Ct. App. 1999).  In that case, plaintiff brought a declaratory judgment against defendant insurer for a determination that defendant's "all risks" insurance policy covered engine damage to plaintiff's aircraft.  *Id.* at 1074.  Defendant argued that the damage was caused by wear and tear, deterioration, or mechanical breakdown, all excluded perils under the insurance policy at issue.  *Id.* at 1073. After a bench trial, the court determined that the damage to the engine was caused by the negligent installation of a seal ring in the engine during maintenance work on the aircraft and concluded that this peril was not excluded from coverage.  *Id.*  The appellate court agreed, stating that "[t]he exclusion provision at issue, viewed in the context of the entire policy, is not meant to apply regardless of any possible negligent antecedent occurrence

9

which in turn causes the engine to sustain mechanical breakdown or abnormal wear and tear." *Id.* at 1076.  Accordingly, the appellate court concluded that "[a]lthough excessive wear and tear or 'mechanical breakdown' may have occurred as a result of the negligence of [a third party], it was the negligence (a covered peril) which was the cause of the loss for the purposes of exclusion."  *Id.*  In reaching its conclusion, the appellate court quoted a case from Washington that summarizes the efficient proximate cause theory: "where an insured risk itself sets into operation a chain of causation in which the last step may have been an excepted risk, the excepted risk will not defeat recovery."  *Id.* at 1075 (quoting *Villella v. Pub. Emps. Mut. Ins. Co.*, 725 P.2d 957, 962 (Wash. 1986)).

Union Savings argues that like the plaintiff in *Associated Aviation Underwriters*, its loss was caused by a covered hazard.  Specifically, Union Savings asserts that the loss was caused not by one of the water based exclusions in the Landlords Policy, but instead by the Tods' failure to maintain electric services to the Property.  Allstate counters, citing *Ramirez v. American Family Mutual Insurance Co.*  652 N.E.2d 511, 515-16 (Ind. Ct. App. 1995). In *Ramirez*, the court concluded that there was no genuine issue of material fact regarding the proximate cause of the property loss where the insureds claimed that the loss was caused by a power outage resulting from an ice storm rather than failure of their sump pump, a peril specifically excluded by the policy.  *Id.*  However, the *Ramirez* policy exclusion excluded loss resulting from sump pump failure "regardless of any other cause or event contributing concurrently or in any sequence to the loss."  *Id.*  Therefore, the court concluded that, "the fact that the sump pump failure was preceded by a power outage resulting from the accumulation of ice on the power lines does not remove the Ramirezes' claim from this exclusion."  *Id.*

10

Allstate argues that its exclusion is even clearer than the *Ramirez* exclusion because although the Landlords Policy does not contain language similar to the language in *Ramirez*, it does state that Allstate clearly excludes loss "consisting of or caused by" water "regardless of its source." Landlords Policy at 7. The "regardless of its source" language is meant to capture any water damage, regardless of the place the water originates, but it does not contemplate excluding water loss caused by an insured risk. *Id.* The *Ramirez* policy, on the other hand, excluded water loss regardless of the cause of the loss. 652 N.E.2d at 515-16. The "regardless of any other cause or event " language contained within the *Ramirez* policy directly contradicts the principle of efficient proximate cause, but nothing in the instant Landlords Policy similarly contradicts the theory of efficient proximate cause. Accordingly, the Court concludes that because nothing in the language of the Landlords Policy precludes it, the theory of efficient proximate cause does apply to the instant case. *See Assoc. Aviation Underwriters*, 712 N.E.2d at 1075.

Allstate's investigator, William Mers Kelly ("Mers Kelly"), inspected the property and provided a cause and origin report with respect to the damages in the basement. Mers Kelly concluded:

1. The high water levels and subsequent water damage were the result of a lack of power to both sump pumps for extended periods.

2. These extended power losses were due to the electric service being shut off first at the request of the tenant June 4, 2008, and then by bankruptcy on October 7, 2008.

3. The extent of the problem was greatly influenced by the lack of proper drainage particularly on the west side (rear) of the structure.

4. The amount of damage was greatly increased by the lack of power to the utility room sump and the lack of clean up over an extended period.

11

Stewart Aff., Ex. 2, at 5.  Union Savings asserts that the sole cause of the damage was the Tods' negligence in paying their electricity bills, resulting in an electrical shut down which caused the sump pump failure and, ultimately, water damage.  Allstate argues that the water event which led to the sump pump overflowing was an intervening event that broke the causal chain started by the Tods' failure to maintain electric service to the house. However, under the efficient proximate cause theory, the water event that occurred after the causal chain was set in motion is simply an effect of the insured risk.  *See Associated Aviation Underwriters*, 717 N.E.2d at 1075 (stating that "where an insured risk itself sets in operation a chain of causation in which the last step may have been an excepted risk, the excepted risk will not defeat recovery).  Accordingly, if the Tods' failure to maintain electric service to the Property is an insured risk, then the claimed loss is covered to the extent that it was caused by such failure.

Union Savings asserts that the loss is covered under the mortgagee clause, which, according to Union Savings, protects the mortgagee in the case that the insured takes action to increase the hazard.  Union Savings further asserts that this coverage is ambiguous.  Allstate argues that the mortgagee clause is not ambiguous.

Allstate suggests that a loss must be covered under the other terms of the Landlords Policy before the coverage contained within the mortgagee clause can attach.  If that is the case, however, the coverage specifically provided by the mortgagee clause would never be effective because any loss that was caused by the perils covered by the mortgagee clause would be excluded under the provisions of Section I.  Accordingly, there would never be an initial "covered loss" in the event of any of the actions of the insured excluded under Section I but covered by the mortgagee clause.  Allstate argues that the mortgagee clause

12

removes three exclusions from Section I that contradict the coverage provided in the mortgagee clause, but that the other exclusions within Section I are applicable to the mortgagee clause.  The only language addressing Section I of the Landlords Policy in the mortgagee clause states that all provisions of Section I of the Landlords Policy apply to the mortgagee clause.

The mortgagee clause initially states: "a covered loss will be payable to the mortgagees." Landlords Policy at 19.  The next sentence states "[a]ll provisions of Section I of the this policy apply to these mortgagees." *Id.*  Allstate argues when these two phrases are read in conjunction, they require an initial "covered loss."  Allstate's suggested reading effectively reads out coverage provided by the mortgagee clause, rendering the whole section surplusage.  Specifically, Section I states that the Landlords Policy does not cover "[t]he failure by any insured person to take all reasonable steps to save the preserve the property when the property is endangered by a cause of loss [Allstate] cover[s]" or "[a]ny substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an insured person."  *Id.* at 8.  However, the mortgagee clause specifically provides the mortgagee with coverage "in the event of an increase in hazard, intentional or criminal acts of, or directed by an insured person, failure by any insured person to take all reasonable steps to save and preserve the property after a loss."  *Id.* at 19.

Reasonable people could disagree as to whether the mortgagee clause removes the three Section I exclusions that contradict the coverage the mortgagee clause purports to provide for the purposes of the mortgagee clause but retains the other Section I exclusions, or whether there must be an initial covered loss that conforms to all of the terms of Section

13

I before the mortgagee clause attaches.  *See Am. Family Ins.*, 774 N.E.2d at 935 (stating that if a provision is susceptible to more than one interpretation and reasonable people could disagree to its meaning, the provision is ambiguous).  The mortgagee clause does not, by its terms, resolve the conflict.  Consequently, the mortgagee clause, when read in conjunction with Section I of the Landlords Policy contains a patent ambiguity, that is, the mortgagee clause purports to both exclude and cover certain causes of loss at the same time. *See Simon Prop. Group, L.P. v. Mich. Sporting Goods Distribs.*, 837 N.E.2d 1058, 1070 (Ind. Ct. App. 2005) (describing a patent ambiguity as "apparent on the face of the instrument and aris[ing] from an inconsistency or inherent uncertainty of language used so that it either conveys no definite meaning or a confused meaning").  Accordingly, the Court concludes that the Landlords Policy does protect the mortgagee's interest in the event of "an increase in hazard, intentional or criminal acts of, or directed by, an insured person, failure by any insured person to take all reasonable steps to save and preserve property after a loss . . . if the mortgagee has no knowledge of the these conditions."  Landlords Policy at 19; *see Gallant Ins. Co.*, 726 N.E.2d at 864 (stating that ambiguities are to be construed strictly against the insurer).  Having concluded that the efficient proximate cause theory applies to this case, and noting that the parties agree that at least part of the loss was caused by the Tods', the Court concludes that to the extent that the damage was caused by the Tods' failure to maintain electricity to the Property, the Landlord's Policy provides Union Savings with coverage.   Therefore, Allstate's Motion for Summary Judgment with respect to Allstate's request that the Court declare that the Landlords' Policy does not provide coverage for Union Savings' claimed loss is **DENIED**.

2. <u>Declaratory Judgment As to the Scope of Coverage Provided to Mr. Tod</u>

Allstate joins its arguments against Union Savings and Mr. Tod with respect to the scope of coverage the Landlords Policy provides.  Mr. Tod failed to respond to Allstate's motion.  The Court notes that as to the property owner, the Landlords Policy excludes both loss caused by or consisting of water and loss caused by an increase in the hazard by the insured.  *See* Landlords Policy, Section I at 7-8.  Accordingly, the Court concludes and **DECLARES** that the Landlords Policy does not extend coverage to Mr. Tod for any of the damage claimed by Union Savings.

3. <u>Breach of Contract</u>

Allstate also seeks summary judgment on Union Savings' breach of contract claim, asserting that because there was no covered loss, Allstate did not breach its contract with Union Savings.  Union Savings did not request summary judgment on its breach of contract claim.  However, as explained above, the Court concludes that Union Savings's claimed loss was at least partially covered and, accordingly, the Court **DENIES** Allstate's Motion for Summary Judgment with respect to Union Savings' breach of contract claim.  The only issue remaining is to what extent the claimed damages were caused by Mr. Tod's increase in the hazard.

4. <u>Bad Faith</u>

Finally, the Court turns its attention to Allstate's arguments for summary judgment with respect to Union Savings' bad faith claim.  In Indiana, insurers have an implied

15

contractual duty to act in good faith by acknowledging coverage for a claim where it exists under the policy. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993).

> The obligation of good faith an fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured iinto settlement of his claim.

*Id.* "[A] good faith dispute over whether an insured has a valid claim will not support the grounds for recovery in tort for the breach of the obligation to exercise good faith." *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 975 (Ind. 2005) (citing *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002)). "As a general proposition, a finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity furtive design, or ill will." *Id.* at 977 (internal quotations omitted).

Allstate asserts that it investigated and denied Union Savings's claim in good faith. Union Savings contends that although Allstate did thoroughly investigate the claim, it ignored the conclusions of its investigator and the advice of its counsel and, as a result, made an unfounded refusal to pay on the Landlords Policy. To the contrary, Allstate did not ignore the advice of its counsel. Union Savings' argument focuses on a small portion of the initial letter in which Allstate's counsel says: "Even if [Allstate's investigation] support[s] a denial of coverage, we are still confronted with Allstate's potential duty to indemnify Union Savings Bank due to the homeowner's increase in the hazard." Plas Dep., Ex. J. However, Allstate's counsel reverses course in his opinion letter following the completion of the investigation. He states:

> Based upon the information . . . obtained during your . . . investigation of the claim, it is our opinion . . . [that] reasonable justification exists to deny Union

16

> Savings Bank's claim under the Mortgagee provisions contained in the policy. The terms of this provision limit the mortgagee's coverage to the provisions of Section I.  Section I provides there is no coverage for losses due to surface or subsurface water through any means.

Dkt. No. 49-52.  Counsel explains that his earlier perception of an ambiguity in the Landlord's Policy was incorrect because the language of the mortgagee clause "does not expand the mortgagee's protection beyond that afforded by the terms of the policy, [but instead] merely provides that conduct by the insured will not jeopardize the mortgagee's rights within the scope of coverage provided by the policy." *Id.*  Concluding that losses due to surface or subsurface water "through any means" are not covered, Allstate's counsel assured them that it was his opinion that Allstate had "reasonable justification" to deny Union Savings' insurance claim.  *Id.*  In the face of the second letter, Union Savings has not put forth sufficient evidence to create a question as to whether Allstate possessed the requisite state of mind to commit the tort of bad faith.  Therefore, the Court **GRANTS** Allstate's motion for summary judgment with respect to Union Savings' bad faith claim.


## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** third party defendant's, Kristin Tod, Motion for Summary Judgment, and **DECLARES** that the Landlords Policy does not entitle her to indemnity from Allstate.  Further, the Court **DISMISSES** Ms. Tod **WITH PREJUDICE** from this cause.

The Court further **GRANTS** plaintiff's, Union Savings Bank, Motion for Summary Judgment and **DECLARES** that to the extent that the claimed damage to the Property was caused by Mr. Tod's failure to maintain electric service to the Property, defendant, Allstate

Indemnity Company, is required by the Landlords Policy to indemnify Union Savings Bank.

Finally, the Court **GRANTS in PART and DENIES in PART**, defendant's, Allstate

Indemnity Company, Motion for Summary Judgment.  Specifically, the Court **DENIES**

Allstate's request for a declaration that the Landlords Policy does not provide coverage for

Union Savings' claimed loss, but the Court **DECLARES** that the Landlords Policy does not

provide Mr. Tod with coverage for the damage claimed by Union Savings.  The Court also

**DENIES** Allstate's Motion for Summary Judgment as to Union Savings' breach of contract

claim, but the Court **GRANTS** Allstate's Motion for Summary Judgment as to Union

Savings' bad faith claim.

IT IS SO ORDERED this 21st day of November, 2011.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Jon C. Abernathy
GOODIN ABERNATHY LLP
jabernathy@goodinabernathy.com

Steven C. Coffaro
KEATING MUETHING & KLEKAMP
scoffaro@kmklaw.com

James R. Matthews
KEATING MUETHING & KLEKAMP
1800 Provident Tower
One E Fourth St., Suite 1400
Cincinnati, OH 45202

18

Cynthia  Reese
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
creese@beneschlaw.com

Brandi M. Stewart
KEATING MUETHING & KLEKAMP PLL
bmstewart@kmklaw.com

Elizabeth J. Wysong
GOODIN ABERNATHY LLP
ewysong@goodinabernathy.com